FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

**PETITION FOR WRIT OF HABEAS CORPUS**
**PURSUANT TO 28 U.S.C. § 2254**

OCT 1 7 2013

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**

RWS

Raymond Franklin
46408 Telfair State Prison
P.O. Box 549, Helena, Ga 31037 , Petitioner,
Name, include name under which you were
convicted; prison number; and place of confinement.

-vs-

William Danforth , Respondent.
Name of Warden, Superintendent, Jailor, or
authorized person having custody of petitioner.

1  13-CV-3438

## Petition

1. Name and county of court which entered the judgment of conviction under attack Superior Court of Cobb County, Marietta, Georgia

2. Date of judgment of conviction July 13, 2011

3. Length of sentence 21/2 + 20 years Sentencing Judge S. Lark Ingram

4. Name of offense(s) for which you were convicted (list all counts): 2 counts of Armed robbery and 1 count of aggravated Assault.

_____

5. What was your plea? (Check one)

   (a) Guilty ☐
   (b) Not Guilty ☑
   (c) Nolo contendere ☐

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details: N/A

   _____

6. Kind of trial? (If you did not plead guilty, Check one)

   (a) Jury ☐
   (b) Judge Only ☑

7. Did you testify at the trial?               Yes ☐   No ☑

8. Did you file a motion for a new trial?       Yes ☐   No ☑

(a)    If so, did the trial court hold a hearing on your motion?

                                                     Yes  ☐  No  ☑

(b)    What was the result?_____

(c)    Date of result?_____

9.    Did you appeal from the judgment of conviction?    Yes  ☑  No  ☐

10.    If you did appeal, answer the following:

(a)    Name of appellate court to which you appealed *Georgia Court of Appeals*

(b)    Result of appeal *Interlocutory and Direct Appeal, Affirmed*

(c)    Date of result *Interlocutory = July 3 2010, Direct = March 26 2013*

(d)    If your appeal was to the Georgia Court of Appeals, did you file a petition for a writ of certiorari with the Supreme Court of Georgia?

                                                 Yes  ☑  No  ☐

(i) If so, what was the result *Interlocutory + Direct appeal denied*

(ii) Date of result *Interlocutory = 1-24-11, Direct = 9-9-13*

(e)    Did you petition for a writ of certiorari with the United States Supreme Court? *On the Interlocutory appeal only*

Result and date of result *Denied October 3, 2011,*

11.    Other than a direct appeal from the judgment of conviction and sentence or a motion for a new trial, have you previously filed any petitions, applications, or motions with respect to this conviction in any state or federal court:

                                                 Yes  ☑  No  ☐

12.    If your answer to 11 was "yes," give the following information. (If more than three petitions, please provide the following information on a separate sheet of paper).

(a)    (1)    Name of court and case number *1:12-cv-00065-RWS-ccH Northern District of Georgia, Atlanta Division*

        (2)    Date that you filed petition or motion *1-31-12*

        (3)    Nature of proceeding *Habeas Corpus Petition*

        (4)    All grounds raised (attach extra sheet if necessary) *Denial of Speedy Trial, Double Jeopardy, Due Process violations and ineffective assistance of counsel.*

        (5)    Did you receive an evidentiary hearing on your petition, application or motion?

                                                   Yes  ☐  No  ☑

        (6)    Name of judge *C. Christopher Hagy*

        (7)    Result *Voluntarily dismissed to exhaust all grounds.*

(8)    Date of Result _Feburary 10, 2012_____

(9)    Did you appeal this result?

                                         Yes  ☐   No  ☛

(10)   If you did appeal,
       Which court heard your appeal?_____N/A_____
       What was the result of the appeal?_____
       Date of result_____

(11)   If you did not appeal from the denial of relief, explain briefly
       why you did not.

                                  N/A_____

       _____

       _____

       _____

       _____

(b)    As to any second petition, application, or motion, give the same
      information:

(1)    Name of court and case number _____N/A_____

       _____

(2)    Date that you filed petition or motion_____

(3)    Nature of proceeding_____

(4)    All grounds raised (attach extra sheet if necessary)_____

       _____

       _____

       _____

       _____

(5)    Did you receive an evidentiary hearing on your petition,
       application or motion?

                                      Yes  ☐   No  ☐

(6)    Name of judge_____N/A_____

(7)    Result_____

(8)    Date of Result_____

(9)    Did you appeal this result?

                                      Yes  ☐   No  ☐

(10)   If you did appeal,
       Which court heard your appeal?_____N/A_____
       What was the result of the appeal?_____
       Date of result_____

(11)   If you did not appeal from the denial of relief, explain briefly
       why you did not.

                          N/A_____

*N/A*

_____

    (c)    As to any third petition, application, or motion, give the same
                information:

        (1)    Name of court and case number    *N/A*

        (2)    Date that you filed petition or motion_____
        (3)    Nature of proceeding_____
        (4)    All grounds raised (attach extra sheet if necessary)_____

        (5)    Did you receive an evidentiary hearing on your petition,
                application or motion?

                                    Yes  ☐   No  ☐
        (6)    Name of judge_____*N/A*_____
        (7)    Result_____
        (8)    Date of Result_____
        (9)    Did you appeal this result?

                                    Yes  ☐   No  ☐

        (10)   If you did appeal,
                Which court heard your appeal?    *N/A*
                What was the result of the appeal?_____
                Date of result_____
        (11)   If you did not appeal from the denial of relief, explain briefly
                why you did not.

                         *N/A*

13.    Is any petition, application, motion, or appeal relating to your conviction or
        sentence currently pending before any court or other tribunal?  (In other
        words, have you filed a motion, petition, or appeal where the court has <u>not</u>
        issued a final ruling?)
                                    Yes  ☐   No  ☑

    If you answered yes, provide:
    The name of the court_____*N/A*_____
    The case number_____
    Nature of the petition, application, or motion_____

14.    State <u>concisely</u> every ground on which you now claim that you are being held
        unlawfully.  Summarize <u>briefly</u> the <u>facts</u> supporting each ground.  If necessary,
        you may attach pages stating additional grounds and facts supporting same.

A. **Ground One:** Denial of a speedy trial, a 6th Amendment Violation, by and through the 14th Amendment.

Supporting Facts: On 1-7-79 petitioner was arrested on armed robbery and aggravated assault charges.  Ten days later he escaped and was recaptured the same day and was charged with murder and kidnapping.  He was tried and sentenced to death on the greater charges.  The initial charges were dead docketed.  Petitioner's convictions were reversed and affirmed.  He was re-tried in 1985 and sentenced to life plus 20 years.  In March 2006, petitioner was approved for parole and sent to work release.  Upon finding out about petitioner's imminent release the Cobb County District Attorney's Office contacted the Parole Board claiming there were new charges.  Petitioner's release was cancelled.  The charges were not new, but a revival of the 28 year old dead docketed charges.  Petitioner contends that the revival and actions concerning these cases constitutes a denial of his right to a speedy trial and that the state court's decisions concerning this issue are contrary to and/or an unreasonable application of clearly established law, as determined by the Supreme Court.

B. **Ground Two:** Vindictive prosecution, a due process violation of the 14[th]Amendment.

Supporting Facts:  The Cobb County District Attorney's Office decided to prosecute these cases 28 years after the fact when they found out petitioner was to be released on parole.  Petitioner was sentenced to death on a murder conviction and successfully appealed.  The state sought the death sentence a second time, but petitioner was sentenced to life.  The state was not satisfied with the parole aspect of petitioner's new sentence and retaliated at the opportune moment by taking these old cases off dead docket to block petitioner's parole.  See Exhibit A.  Petitioner contends that this is vindictive prosecution in that the state's actions are motivated by retaliation for petitioner exercising his right to appeal and his right to exercise his parole eligibility as applies to his new sentence.  The state court's decisions concerning this issue are contrary to and/or an unreasonable application of the Supreme Court.

C.  Ground Three:   Due process violation based on fundamental fairness, decency and fair process, a 14th Amendment violation.

Supporting Facts:  The Cobb County District Attorney's Office interfered with petitioner's parole eligibility by reviving a 28 year old case off the dead docket.  Petitioner contends that this is a bad-faith prosecution and that the laws, rules and process were manipulated by the misuse of the dead docket, the violation of statute of limitations, violation of separation of powers and the cumulative effect of all their efforts to delay and postpone or end the possibility of petitioner being released on parole, thereby increasing petitioner's actual punishment.   The state court's decisions concerning this issue are contrary to and/or an unreasonable determination of the facts and application of the precedents and standards set forth by the Supreme Court.

D.  Ground Four:  Ineffective assistance of counsel, a 6th Amendment violation, by and through the 14th Amendment.

Supporting Facts:  Petitioner raised on direct appeal ineffective assistance of counsel on two different attorneys whose acts and omissions allowed this case to be removed from the dead docket without objection. Petitioner contends that the state court's unreasonable reliance on their continued statements that "petitioner did not object to the case being removed from the dead docket" is proof of actual prejudice.  Therefore, the state court's decisions concerning this issue are an unreasonable application of clearly established law, as determined by the Supreme Court.

15.    If any of the grounds listed in questions 12 A, B, C, and D, were not previously presented in any other court, state or federal, state briefly what grounds were not so presented, and give your reasons for not presenting them.

_____N/A_____
_____
_____
_____
_____

16.   Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a)   At preliminary hearing *Billy Spruell, 227 Crescent Circle Marietta, GA 30064*

(b)   At arraignment and plea *Mitch Durham*

(c)   At trial *Jason W. Swindle, 310 Tanner Street, Carrollton GA 30117*

(d)   At sentencing *Jason W. Swindle, 310 Tanner Street, carrollton GA 30117*

(e)   On appeal *Interlocutory Pretrial = Billy Spruell Direct Appeal = Jason Swindle and Michael Hubbard*

(f)   In any post-conviction proceeding *Jason Swindle and Micheal Hubbard*

(g)   On appeal from any adverse ruling in a post-conviction proceeding ___ *N/A*

17.   Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court at the same time?

                                       Yes   ☑   No   ☐

18.   Do you have any future sentence to serve after you complete the sentence imposed by the conviction under attack?

                                       Yes   ☐   No   ☑

(a)   If so, give name and location of court which imposed sentence to be served in the future _____

(b)   Give date and length or sentence to be served in the future _____

(c)   Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
                                       Yes   ☐   No   ☑

19.   Timeliness of Petition: If over one year has passed since the conclusion of your appeal, not counting any time during which an application for habeas corpus was pending in any state court, you must explain why the one-year statute of limitation set forth in 28 U.S.C. § 2244(d)* does not bar your petition:

*N/A*

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

*Title 28 U.S.C. § 2244(d) provides:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–

(A) the date on which the judgement became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

I declare under penalty of perjury that the foregoing is true and correct.

Signed on  October 14th, 2013
       (Date)

_Raymond Franklin_
Signature

_____
Signature of Attorney, if applicable

Please note that under O.C.G.A. § 9-14-45 service of a petition of Habeas Corpus shall be made upon the person having custody of the petitioner. If you are being detained under the custody of the Department of Offender Rehabilitation, an additional copy of the petition must be served on the Attorney General. If you are being detained under the custody of some authority other than the Department of Offender Rehabilitation, an additional copy of the petition must be served upon the District Attorney of the county in which the petition is filed. Service upon the Attorney General or the District Attorney may be had by mailing a copy of the petition and a proper certificate of service.

Exhibit A :
PAge 1 of 2

# DA tries to block killer's parole

**Unusual tactic:** Cobb may revive charges that have been dormant since the 1970s.

**By DAVID A. MARKIEWICZ**
dmarkiewicz@ajc.com

Twenty-eight years.

That's how long it's been since prison inmate Raymond Lee Franklin overpowered a Cobb County Sheriff's deputy during a visit to a dentist's office. He took the deputy's pistol, kidnapped a young dental assistant, then killed an elderly man after his escape.

Twenty-eight years.

Long enough, Franklin's lawyer says, to merit parole.



**Raymond Lee Franklin** got an initial nod for parole, but for now he's not going anywhere.

"He's done everything he could to rehabilitate himself," said Billy Spruell, Franklin's attorney. "He's been a model prisoner."

Not long enough, says the daughter of the victim.

"To see our daddy shot down right in front of you ... laying there with his eyes open, you don't never forget," said Gladys Collie. "I hope he never gets out."

Whether Franklin ever has a chance to go free may depend on the success of an extraordinary legal maneuver by Cobb District Attorney Pat Head.

► Please see KILLER, D5

The Atlanta Journal-Constitution / ajc.com       5

# Killer: DA reactivates old charges to block parole

> **Continued from D1**

Head wants to try Franklin, now 49, for crimes he allegedly committed days *before* he shot Claude Collie on Jan. 17, 1979.

Franklin was in jail, and had been indicted on armed robbery and aggravated assault charges, when he and three other prisoners were escorted by two deputies to a Marietta dentist's office on Canton Highway that morning to get treatment.

After the killing, with Franklin facing trial for kidnapping and murder, the earlier charges were "dead-docketed" — essentially left dormant by the court. They remained irrelevant until recently, when Head got word through the Georgia Board of Pardons and Paroles that Franklin was about to be released.

"All of the surviving victims from that [murder] case have very strong feelings that he should remain in prison," Head said. "I happen to agree with them. ... Someone who has been convicted of murder and sentenced to life in prison should serve life in prison."

An armed robbery conviction would net Franklin a 20-years-to-life sentence, without parole, possibly keeping him in prison the rest of his life.

So Head began the process to bring the old case to trial.

Trying someone 28 years late is "new ground," Head acknowledged. "There's no case law that I can go to."

Head said that, "for judicial economy," there was no reason to pursue the initial charges in 1979, so they were dead-docketed. "But just in case something were to happen — and usually you think it would happen in the next couple of years — then we've got this case pending."

"Is bringing a dead-docket case 28 years later extraordinary? Absolutely," said Atlanta lawyer and criminal law expert Steven Sadow. "Can I think of one even half that long? No."

Franklin, formerly of Lithia Springs, was convicted of murdering Collie and received the death penalty in 1979. But in 1983 an appeals court ruled that the jury that convicted him was given improper instructions.

## TERMS TO KNOW

> **Dead Docket:** Prosecution of a case is postponed but may be brought back for trial with permission of the court.

> **Statute of Limitations:** Varies by crime. Starts when the crime is committed and ends with indictment.

> **Speedy Trial:** Right guaranteed under 6th Amendment of U.S. Constitution. Multiple factors used to determine "speedy," including length of delay and reason for delay.

That led to a retrial.

Franklin was convicted a second time, but instead of the death penalty got a life sentence. Georgia had no life-without-parole sentence at the time, and Franklin eventually became eligible for parole.

A Georgia Board of Pardons and Paroles spokesperson said Franklin was rejected for parole 12 times. But last October, the board sent out notice that he was about to be released.

Parole records in Georgia are classified, and the five members of the parole board rarely discuss the rationale behind their decisions. But board spokeswoman Scheree Lipscomb said that Franklin has earned a GED and two associate's degrees while in prison, and has also taken advantage of other rehabilitative programs. Lipscomb also noted that Franklin's 28 years in prison is seven years beyond the average sentence served by lifers with a chance for parole.

"At this point in time, he's not being released," Lipscomb said. Franklin will be considered for parole again in November.

"Parole was imminent," Spruell explained, "and the state found out about it."

Head and others sent letters of opposition.

Days after the notice of Franklin's release, his parole was put off. Alarmed by the prospect of parole for Franklin, Head pulled information on the aggravated assault and armed robbery "to see if we could get witnesses to try the case and put it back together, even though it was this old.

"We concluded we can."

A "hold" has been placed on Franklin, Head said, so that if he were scheduled for release for any reason, he would be transported to the Cobb County Adult Detention Center and booked into the jail on the robbery and assault charges. If the court ruled that Franklin could not be tried on the old charges, he would be eligible to go free.

What ultimately will happen — whether Franklin will actually be tried on the old charges — is uncertain because of the uniqueness of the case. Head said it will take a court "some time to sift through the issues."

One of the issues is time. The statute of limitations is four years for aggravated assault and seven years for armed robbery.

But, Head said, the statute doesn't apply in this case because Franklin was indicted on the charges shortly after the crimes were committed, and the time clock for the statute of limitations stops with indictments.

Spruell said he will try to have the case dismissed as a violation to the 6th Amendment of the U.S. Constitution, the right to a speedy trial. Spruell said a court will have to consider the length of the delay in assessing the case, the reason for the delay, and the resulting impact on the defendant's case.

Sadow called the matter "an open question." What a court will have to decide, he said, is how to treat a dead-docket case years after a statute of limitations has expired.

Spruell called the state's case "vindictive." He said Franklin is a "devout" student of the Bible and worked outside the prison system last summer while in a transition facility.

Parole, he added, "is a valuable thing for society. The theory is that there is a correct time to parole everybody."

Gladys Collie disagrees, at least in the case of Franklin.

"They claim it wasn't premeditated," said Collie, 66. "Maybe it wasn't, but daddy was sitting in the house not bothering anybody. That boy is mean. He'd been in trouble with

the law since he was 16. I don't think he's reformed. I think if he gets out, he'll kill again."

About 9:30 on the morning of Jan. 17, 1979, the Collies — Gladys, Claude and his wife, Ollie — had just eaten breakfast and watched a TV game show, "The Joker's Wild." Gladys, who had worked the night shift at the local Kodak plant, went to her bedroom to take a nap.

Franklin, who had fled the dentist's office with his kidnap victim, 24-year-old Carol Heitmuller, walked to the Collies' nearby home, a four-room frame house, in search of a getaway car. Collie answered and seeing Franklin and the gun and hearing his demand for a car, slammed the wooden door.

Franklin fired the .357 magnum through the door into Collie's chest. Another shot went up and through the roof of the house. Franklin said he did not intend to shoot Collie, and that the gun went off accidentally.

Gladys' car was parked outside and after shooting Collie, Franklin demanded the keys from Gladys and her mother, and threatened both, she said.

Franklin fled without the car. After a 10½-hour search, he was found about 8 p.m., shoeless, behind a shopping center not far from the dentist's office.

Bill Hutson, who was Cobb sheriff at the time, wrote a letter opposing parole for Franklin.

"He is a cold-blooded killer and he should have been executed years ago," Hutson said.

"It was a traumatic thing for the entire county. It was horrible. We all felt a sense of responsibility for what occurred."

The two deputies who escorted the four prisoners to the dentist office that day were suspended. One, Kenny King, remains with the department. Through a spokesman, he declined comment for this article.

The woman kidnapped by Franklin declined to be interviewed, saying she is fearful what he might do if he is freed.

Gladys Collie understands.

"I'm having nightmares since this came back up. I fear for my life," she said. "I'm just hoping they don't let him out."

Staff writer Carlos Campos contributed to this article.

*Exhibit B:*

## STATE OF GEORGIA
### DEPARTMENT OF CORRECTIONS

### NOTICE OF RELEASE CANCELLATION

Emergency: __Y__

Date: 10/20/2006  Time: __15:16__

Destinantion: 0231-MACON MALE TRANS-CTR

Attention: WARDEN

RE: FRANKLIN, RAYMOND L _____ ID#: __EF-0000119152__

The above named inmate scheuled for release on __10/25/2006__ has been cancelled due to PAROLE BOARD HAS NEW INFORMATION _____ . ~~Please return release orders and check to Releases and Agreements, Central Office.~~

For Teletype's sent after 4:15 P.M. please have duty officer check prior to 8:00 A.M. before release of inmate.

*Release papers not mailed out.*

*by della
10/20/06
3:16*

AUTHORIZATION: *Calvin J. Brown*

Calvin J. Brown, Director
Inmate Administration

# STATE BOARD OF PARDONS AND PAROLES *Exhibit C.*



Albert R. Murray
Chairman

2 Martin Luther King, Jr., Drive, S.E.
Balcony Level, East Tower
Atlanta, Georgia 30334-4909
(404) 656-4661
www.pap.state.ga.us

Terry E. Barnard
Vice Chairman
Robert E. Keller
Member
James E. Donald
Member
James W. Mills
Member

January 24, 2013

Raymond L. Franklin, EF-119152
Telfair State Prison
210 Long Bridge Road
Helena, GA 31037-2804

Dear Mr. Franklin:

As a result of you being sentenced to a life sentence for Armed Robbery (Indictment 79904434) consecutive to the life sentence you are currently serving, you are not eligible for parole consideration until July 2018. Consequently, you will no longer be considered annually on your sentence on Indictment number 85-11-09. Consideration on both sentences will resume after you become eligible in July 2018 in accordance with state law and Board policy.

Sincerely,

*Thurman L. Henderson*

Thurman L. Henderson
Assistant Director
Clemency & Parole Selection Division

**RECEIVED**

**FEB 0 6** 2013

**OFFENDER PROCESSING**

TLH/kp

cc:     Warden
        Offender Administration

*Inmate received*
*Feb 13 2013*

*Exhibit O:*

IN THE SUPERIOR COURT OF COBB COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| THE STATE OF GEORGIA | X | INDICTMENT NUMBER 79-0444 |
| V. | X | ARMED ROBBERY (2 COUNTS) |
| RAYMOND LEE FRANKLIN | X | AGGRAVATED ASSAULT |

O R D E R

THE DEFENDANT HAVING BEEN CONVICTED ON APRIL 26, 1979, AND SENTENCED TO 20 YEARS FOR KIDNAPPING AND A DEATH SENTENCE FOR MURDER;

THE ABOVE AND FOREGOING INDICTMENT IS HEREBY PLACED ON THE DEAD DOCKET, WITH REGARD TO THIS DEFENDANT ONLY.

SO ORDERED, THIS 11 DAY OF MAY, 1979.

MARY E. STALLY
ASSISTANT DISTRICT ATTORNEY
COBB JUDICIAL CIRCUIT

APPROVED BY:



EXHIBIT
O

## Certificate of Service

I, Raymond Franklin, do swear and/or declare that on this date _October 14th, 2013_

2013, I have served the enclosed "Petition for Writ of Habeas Corpus" to:

Attorney General, Georgia Department of Law, 40 Capitol Square, S.W., Atlanta,

Georgia 30334-1300, by depositing an envelope containing a copy of the above

document in the United States Mail properly addressed and with first class

postage prepaid.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: _October 14th, 2013_

Raymond Franklin

Raymond Franklin
46408, H-4
Telfair State Prison
P. O. Box 549
Helena, GA 31037

**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 26, 2013**

**NOT TO BE OFFICIALLY**
**REPORTED**

# In the Court of Appeals of Georgia

A12A1673. FRANKLIN v. THE STATE.

PHIPPS, Presiding Judge.

After a bench trial in which the facts were stipulated, Raymond Franklin appeals his convictions for aggravated assault and two counts of armed robbery. He contends that the trial court erred by: (1) failing to rule on his motion to dismiss the indictment based on the expiration of the statute of limitation; (2) denying his motion to dismiss the indictment based on the expiration of the statute of limitation; (3) denying his motion to dismiss the indictment based on the ineffective assistance of two of his attorneys; (4) denying his motion to dismiss the indictment based on prosecutorial vindictiveness; (5) denying his motion to dismiss the indictment, thereby allowing the prosecution to usurp the decision of the parole board and violate the doctrine of separation of powers; and (6) ruling that his due process rights had not

been violated. In a final enumerated error, Franklin purportedly reserved his right to appeal the issue of whether he is entitled to receive credit for time served, which decision he stated he was "awaiting . . . from the Department of Corrections." For the reasons that follow, we affirm.

This is the second appearance of this case before the court.[1] In its first appearance, Franklin appealed the trial court's denial of his motion to dismiss based upon a violation of his right to a speedy trial, and he also appealed what he claimed was the trial court's denial of his motion to dismiss based upon the expiration of the statute of limitation.[2] In that appeal, after setting forth the facts of the case, we affirmed the trial court's denial of Franklin's motion to dismiss based upon an alleged violation of his right to a speedy trial, but we did not rule on the statute of limitation issue because we found that the trial court had not ruled on that issue.[3]

In the prior appeal, we laid out the statement of the case as follows:

The record in this case shows that Franklin was indicted in Cobb County Superior Court on January 7, 1979, for two counts of armed robbery and

---

[1] See *Franklin v. State*, 305 Ga. App. 354 (699 SE2d 575) (2010).

[2] Id.

[3] Id. at 362-363 (2).

2

one count of aggravated assault. Ten days later, Franklin escaped from custody during a supervised visit to a dentist's office. He killed a person during the course of his escape before being recaptured within 24 hours. On February 8, 1979, Franklin was separately indicted for abduction, kidnapping, and murder. On May 11, 1979, the trial judge granted the State's request that the armed robbery case against Franklin be placed on the dead docket because Franklin was "convicted on April 26, 1979, and sentenced to 20 years for kidnapping and a death sentence for murder." The record shows no objection by Franklin to the placement of the armed robbery case on the dead docket.

On April 29, 1984, the United States Supreme Court affirmed a decision by the Eleventh Circuit Court of Appeals setting aside Franklin's murder conviction and death sentence.[4] On October 30, 1985, Franklin was again convicted of murder and kidnapping and sentenced to life in prison.[5]

After we issued an opinion in the prior appeal, affirming the judgment, the case was

remitted to the trial court, and the case proceeded to final resolution.[6] Before the case

---

[4] See *Franklin v. Francis*, 720 F2d 1206 (11th Cir. 1983), affirmed, *Francis v. Franklin*, 471 U. S. 307 (105 SCt 1965, 85 LE2d 344) (1985).

[5] *Franklin v. State*, supra, 305 Ga. App. 354.

[6] Franklin's prior appeal was a direct appeal from the denial of his pre-trial motion to dismiss based on a violation of his constitutional right to a speedy trial. Since then, however, the law has changed, allowing an appeal from such denial under the interlocutory appeal procedures only. See *Sosniak v. State*, 292 Ga. 35, 40 (2)

3

was resolved in the trial court, however, Franklin filed several motions most upon which the trial court ruled, and to which Franklin excepts herein.

1. Franklin contends that the trial court erred by failing to rule on his motion to dismiss the indictment based on the expiration of the statute of limitation.

After the remittitur but prior to trial, Franklin filed, among other things, a "Motion to Dismiss Pursuant to *Underhill v. State*."[7] At a pre-trial hearing on the motion, Franklin argued that the court's decision in *Underhill* prohibited the state from "hold[ing] a dead docket out for a period of time in order to toll the statute of limitations." He asserts that, here, the state placed the case on the dead docket for the unlawful purpose of tolling the statute of limitation. Franklin asked the trial court to "render a ruling . . . in [his] favor dismissing this case based on the statute of limitations running because the dead docket was placed on this case for an unlawful purpose. Therefore, the statute of limitations continued to run." Both Franklin and the

---

(734 SE2d 362) (2012) (holding that defendants must follow the interlocutory appeal procedures of OCGA § 5-6-34 (b) when pursuing appellate review from a denial of a pre-trial motion for a constitutional speedy trial; holding that prior decisions wrongly determined that a defendant has the right to bring a direct appeal from a denial of a pre-trial motion for a constitutional speedy trial).

[7] 129 Ga. App. 65 (198 SE2d 703) (1973).

4

state apprised the trial court of this court's determination in the prior appeal, that the trial court had not ruled on the statute of limitation issue.

On the day of trial, it was indicated that Franklin would waive a jury trial and proceed with a bench trial in which the pertinent facts were stipulated. After the trial court heard argument from Franklin and from the state regarding multiple motions, including Franklin's motion to dismiss on the basis of the expiration of the statute of limitation, the trial court stated: "As far as the statute of limitations argument, I believe in my order I dealt with those, all the issues at the time, the issues that I need to deal with and addressing those arguments. So I will leave it as it is." Soon thereafter, the trial court asked: Now, do we need to go to the waiver of rights issue?" Franklin was placed under oath, and the trial court examined him as to his decision to waive a jury trial and to proceed on a bench trial. The stipulated facts were presented to the court. The trial court found Franklin guilty of all counts, and entered judgment on the convictions.

The state concedes that the trial judge merely "stated her belief that she had already dealt with that issue," concerning the statute of limitation, but asserts that any question concerning the court's statement was waived because Franklin's attorney failed to object and thereby acquiesced, and "regardless whether the trial judge failed

5

to rule on this issue, any error would be harmless because the prosecution is not barred by the statute of limitations."

We reject the state's argument that defense counsel acquiesced in the trial court's statement by not objecting. "Once the trial court has addressed a party's motion or objection and has issued a ruling, the party adversely affected need not then further object or 'except' to the trial court's ruling in order to preserve the issue for appeal."[8] The state's reliance on *Beasley v. State*,[9] is misplaced, as in that case this court held that defense counsel acquiesced in the trial court's ruling that it would not instruct the jury on a particular principle of law when counsel stated in response to the court's ruling: "Okay. . . . I can stay within the confines of that."[10] Here, trial counsel made no statements that could have been construed as acquiescing to the court's statement, and the state points to none which it contends should have been so construed.

---

[8] *Ellis v. State*, 287 Ga. 170, 172 (2) (695 SE2d 35) (2010), citing *Davie v. State*, 265 Ga. 800, 802 (2) (463 SE2d 112) (1995).

[9] 254 Ga. App. 839 (563 SE2d 909) (2002).

[10] Id. at 841 (2).

6

We agree with Franklin that the trial court made no explicit ruling on his motion to dismiss on the ground that the statute of limitation had expired. We do not agree, however, that the failure to expressly rule on the motion prevents us from reviewing the issue. In *Curry v. State*,[11] this court affirmed a defendant's conviction for rape and kidnapping where on appeal, the defendant claimed that the trial court erred in granting a pretrial motion in limine filed by the state.[12] The state argued that the issue had not been preserved for appeal because the trial court had not ruled on the motion.[13] This court held that although the trial court had "made no express ruling on the state's motion," based on the appellate record – which showed that the trial court relied on certain case law, and also showed comments later made by both counsel indicating that the motion in limine had been granted – it was evident that "the court implicitly granted the state's motion," and thus, the issue had been preserved for appellate review.[14]

---

[11] 243 Ga. App. 712 (534 SE2d 168) (2000).

[12] Id. at 716 (3).

[13] Id.

[14] Id.

7

"A statute of limitation provides the time within which a legal proceeding must be commenced after the cause of action accrues. . . ."[15] A ruling that the statute of limitation had expired could have absolved Franklin of criminal prosecution for the commission of the crimes with which he was charged.[16] Although the trial court made no express ruling on Franklin's motion, considering that the trial court, after hearing argument on the motion and determining that it had already dealt with that issue, subsequently examined Franklin regarding his decision to waive a trial by a jury and to proceed on a bench trial, presided over the bench trial, found Franklin guilty of the charges for which he had been indicted, and entered judgment on the convictions, we find it evident from the record that the trial court implicitly denied Franklin's motion

---

[15] *Phagan v. State*, 287 Ga. 856, 859 (700 SE2d 589) (2010).

[16] See *Jenkins v. State*, 278 Ga. 598, 604-605 (1) (B) (604 SE2d 789) (2004) ("If a defendant prevails on a pretrial plea in bar on the statute of limitations, the charge should be dismissed; if the [s]tate prevails on this issue before trial, the defendant may still require the [s]tate to prove at trial that the charge is not barred by the statute of limitations. . . . In [the instant] case, because the trial court correctly found before trial that the statute of limitations barred his prosecution on [some] charges, the [s]tate cannot present these charges to the [trier of fact] at trial.") (footnotes omitted).

8

to dismiss based on ground that the statute of limitation had expired.[17] Accordingly, we hold that the issue was preserved for our consideration.[18]

2. Franklin contends that the trial court erred by denying his motion to dismiss the indictment based on the expiration of the statute of limitation. Franklin argues that the statute of limitation was not tolled by placing the case on the dead docket, and that thus, because the statute of limitation ran while Franklin's case remained on the dead docket for approximately 27 years, the state "may not now reinstate the prosecution." We disagree.

> The appellate standard of review for a plea in bar asserting a statute of limitation defense is a de novo review of the issue of laws. As this ruling involves a mixed question of fact and law, we accept the trial court's findings on disputed facts and witness credibility unless they are clearly erroneous, but independently apply the law to the facts.[19]

OCGA § 15-6-61 (a) (4) (B) pertinently provides that it is the duty of a clerk of superior court to keep in the clerk's office a criminal case management system

---

[17] See *Curry*, supra.

[18] Id.

[19] *State v. Conzo*, 293 Ga. App. 72, 73 (666 SE2d 404) (2008) (citations omitted); *Radar v. State*, 300 Ga. App. 411, 413-414 (2) (685 SE2d 405) (2009).

9

which shall contain entries of "cases which are ordered dead docketed at the discretion of the presiding judge and which shall be called only at the judge's pleasure." In *State v. Creel*,[20] this court noted that it had previously characterized the dead docket as a "procedural device by which the prosecution is postponed indefinitely but may be reinstated any time at the pleasure of the court."[21] In that case, we also recognized that "[p]lacing a case upon the dead docket certainly constitutes neither a dismissal nor a termination of the prosecution in the accused's favor. A case is still pending which can be called for trial at the judge's pleasure, or upon which the accused can make a demand for trial."[22]

In 1979, the statute of limitation for armed robbery was seven years;[23] and the relevant code section provided that the prosecution "must be commenced within seven years after the commission of the crime."[24] In 1979, the statute of limitation for

---

[20] 216 Ga. App. 394, 395 (454 SE2d 804) (1995).

[21] Id.

[22] Id. (citations and punctuation omitted).

[23] Former OCGA §§ 17-3-1 (b), 16-8-41.

[24] Former OCGA § 17-3-1 (b).

10

aggravated assault was four years;[25] the relevant code section provided that the prosecution "must be commenced within four years after the commission of the crime."[26]

"A prosecution commences with the return of an indictment, not with the onset of trial."[27] And "the period of limitation runs from the commission of the offense to the date of filing of the indictment."[28] These principles of law apply to cases that a trial court has placed on and later removed from the dead docket.[29] Franklin was indicted in January 1979, for the January 1979 crimes committed in this case. Thus, Franklin was indicted within the then-applicable seven-year statute of limitation for armed robbery, as well as within the then-applicable four-year statute of limitation for

---

[25] Former OCGA §§ 17-3-1 (c), 16-5-21.

[26] Former OCGA § 17-3-1 (c).

[27] *Peavy v. State*, 179 Ga. App. 397 (1) (346 SE2d 584) (1986) (citations omitted).

[28] *Freeman v. State*, 194 Ga. App. 905, 907-908 (8) (392 SE2d 330) (1990) (citation omitted).

[29] See *Hall v. Hopper*, 234 Ga. 625-626 (1) (216 SE2d 839) (1975).

11

aggravated assault. And Franklin's contention that the statute of limitation had run during the time the case remained on the dead docket is without merit.[30]

We decline Franklin's invitation to rely on dicta[31] in *Underhill v. State*[32] and hold that the statute of limitation had run because after indictment, the state placed the case on the dead docket for the unlawful purpose of "keep[ing] [the] indictment hanging over the head of the defendant merely to toll the statute of limitation."[33] The quoted statement was not necessary to the determination of the speedy trial issue in *Underhill*, where the lapse of time involved was "less than that set out in the statute of limitation."[34] "Dicta is binding on neither the bench nor the bar."[35]

---

[30] See id. (placing case on and later removing it from dead docket did not cause statute of limitation to expire where judgment was entered after the period of time provided by the statute of limitation had passed).

[31] See *Franklin*, supra 305 Ga. App. at 362-363 (2).

[32] 129 Ga. App. 65 (198 SE2d 703) (1973).

[33] Id. at 66 (1).

[34] Id. See *Tesler v. State*, 295 Ga. App. 569, 575-576 (2) (672 SE2d 522) (2009) (defining dicta as "a statement in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand"), citing *Zepp v. Brannen*, 283 Ga. 395, 397 (658 SE2d 567) (2008).

[35] *Walker v. State*, 290 Ga. 696, 700 (2), n. 3 (723 SE2d 894) (2012).

12

The issue in *Underhill* was whether the defendant's Sixth Amendment right to a speedy trial had been violated.[36] In this case, the indictment was filed within the applicable statutes of limitation, and Franklin provides no authority to support his position that placing this case on the dead docket had the effect of tolling the statutes of limitation, even if, contrary to his position, the purpose for placing it thereon was not "unlawful."[37] Franklin's statute of limitation argument is without merit.[38]

3. Franklin contends that the trial court erred by denying his motion to dismiss the indictment based on the ineffective assistance of two of his trial attorneys.

---

[36] Id. at 66-67 (1).

[37] See OCGA § 17-3-2 ("The period within which a prosecution must be commenced under Code Section 17-3-1 or other applicable statute does not include any period in which: (1) The accused is not usually and publicly a resident within this state; (2) The person committing the crime is unknown or the crime is unknown; (3) The accused is a government officer or employee and the crime charged is theft by conversion of public property while such an officer or employee; or (4) The accused is a guardian or trustee and the crime charged is theft by conversion of property of the ward or beneficiary."). See also *State v. Bair*, 303 Ga. App. 183 (692 SE2d 806) (2010) (where first indictment filed within the applicable statute of limitation was quashed because it was not sufficient to enable defendant to prepare for trial and respond to the charges against her or to protect her against multiple prosecutions, first indictment did not toll the statute of limitation for second indictment which was filed within six months of the date on which the first indictment was quashed but after the statute of limitation had expired).

[38] See *Hall*, supra.

13

To prevail on a claim of ineffective assistance of trial counsel, Franklin must show that his counsel's performance was professionally deficient and that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been more favorable to him.[39] "An appellate court will uphold a trial court's findings of fact on a claim of ineffective assistance of counsel unless those findings are clearly erroneous; we review the trial court's legal conclusions de novo."[40] "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, it is not incumbent upon the reviewing court to examine the other prong."[41]

(a) Franklin contends that his former attorney who, in 2007, moved to dismiss the indictment based on the expiration of the statute of limitation was ineffective for failing to procure a ruling from the trial court on that ground. For the reasons

---

[39] *Strickland v. Washington*, 466 U. S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984); *Toomer v. State*, 292 Ga. 49, 58 (4) (734 SE2d 333) (2012).

[40] *Morris v. State*, 280 Ga. 184, 185 (2) (625 SE2d 391) (2006); *Badie v. State*, 317 Ga. App. 712, 717 (2) (732 SE2d 553) (2012).

[41] *Badie*, supra.

14

discussed in Division 2,[42] Franklin cannot show that he was prejudiced by counsel's failure to procure an express ruling on the statute of limitation issue.[43]

(b) Franklin contends that another former attorney was ineffective for failing to object to the state's motion to remove the indictment from the dead docket. In his appellate brief, he argues: "Had [the attorney] objected and argued that the case could not be revived based on the holding in *Underhill*, [Franklin] would have been [in] a better legal position to have [the Court of Appeals] dismiss the case on appeal." For the reasons discussed in Division 2,[44] such an objection would have been meritless. Therefore, Franklin has not shown that his attorney's assistance was ineffective in that regard.[45]

---

[42] Supra.

[43] See *Morgan v. Mitchell*, 272 Ga. 134, 138 (1) (527 SE2d 556) (2000) (habeas court erred in concluding that trial counsel's failure to obtain a ruling on a motion was prejudicial, thereby rendering trial counsel's assistance ineffective; evidence showed that ruling defendant sought would have been prejudicial to his defense).

[44] Supra.

[45] See *Porter v. State*, 292 Ga. 292, 294 (3) (a) (736 SE2d 409) (2013) (failure to make a meritless objection cannot constitute evidence of ineffective assistance).

15

4. Franklin contends that the trial court erred by denying his motion to dismiss based on prosecutorial vindictiveness. Relying on *North Carolina v. Pearce*[46] and *Blackledge v. Perry*,[47] he argues that the state's purpose was wrongful in prosecuting the instant case – to punish him for successfully appealing his conviction and death sentence for murder in a separate case, and for obtaining pre-approval for parole in that separate case.

When reviewing a trial court's ruling on a motion to dismiss an indictment on the basis of prosecutorial vindictiveness, "we will be bound by the trial court's findings of fact unless they are clearly erroneous."[48]

In our prior opinion, we noted (and in accordance with the trial court's factual findings in its 2009 speedy trial dismissal order ) that the instant case was placed on the dead docket in 1979;[49] that Franklin's attorney at the time of his 1985 murder retrial, testified at a 2007 motion to dismiss hearing that Franklin had waived his

---

[46] 395 U. S. 711 (89 SCt 2072, 23 LE2d 656) (1969).

[47] 417 U. S. 21 (94 SCt 2098, 40 LE2d 628) (1974).

[48] *Brandeburg v. State*, 292 Ga. App. 191, 198-199 (4) (663 SE2d 844) (2008) (citation and punctuation omitted).

[49] *Franklin v. State*, supra at 354.

16

appeal rights in the murder case based upon an agreement with the state that the instant armed robbery and aggravated assault case would be dismissed;[50] that the case was not then removed from the dead docket and dismissed;[51] and that the district attorney who placed the case on the dead docket in 1979 testified that the case remained on the dead docket because of the possibility that "either those charges [the murder/kidnapping case] would fall or that ultimately the defendant may be in the position to be released."[52] We also noted in the prior opinion that within a week of the court removing the armed robbery and aggravated assault case from the dead docket, in January 2007, Franklin's mother received a letter from the state board of pardons and parole, indicating that it had reconsidered Franklin's case and determined that its previous decision to tentatively grant parole was not in the best interest of society "based on the very serious nature of his crime. . . ."[53]

---

[50] Id. at 355.

[51] Id. at 356.

[52] Id.

[53] Id.

17

The circumstances in *Pearce* and *Blackledge* concerned "upping the ante,"[54] i. e., increasing the punishment, for a subsequent prosecution of the same case.[55] Those circumstances are not present in this case. Here, Franklin asserts that he was being punished by being prosecuted in one case based on his pre-approval for parole and success in overturning his death sentence in a separate case. Franklin's argument based on *Pearce* and *Blackledge* is thus, misplaced.

We recognize that the "[p]ursuit of a course of action designed to penalize one's reliance on a legal right is patently unconstitutional."[56] But Franklin points to no evidence in the record showing that the state prosecuted the instant case to punish him for successfully appealing his conviction and death sentence for murder in a separate case, and for obtaining pre-approval for parole in that separate case.[57] Franklin's claims of prosecutorial vindictiveness concern the district attorney who

---

[54] *Blackledge*, supra at 27-28 (I).

[55] Id. at 27-29 (I); *Pearce*, supra at 717-719, 726.

[56] *Lee v. State*, 177 Ga. App. 698, 700 (1) (340 SE2d 658) (1986) (citation omitted).

[57] See *Sanders v. State*, 290 Ga. 637, 641 (4) (723 SE2d 436) (2012) (the burden is always on the appellant in asserting error to show it affirmatively by the record); *Davenport v. State*, 170 Ga. App. 667, 668 (2) (317 SE2d 895) (1984) (the burden is on him who asserts error to show it affirmatively by the record).

18

testified that he placed the case on the dead docket in 1979 in the event that the charges in the murder case "would fall" or the defendant was in a position to be released from incarceration. But the district attorney who *removed* the case from the dead docket in 2007 and prosecuted the case was not the same prosecutor who had *placed* the case on the dead docket in 1979.[58] Franklin points to no evidence in the record that the district attorney who removed the case from the dead docket and prosecuted the case did so to pursue a course of action designed to penalize Franklin's reliance on appellate rights, as did, allegedly, the district attorney who placed the case on the dead docket in 1979.[59] Moreover, the letter from the board of pardons and parole did not indicate that its decision to deny parole was based on the removal of the instant case from the dead docket; rather, the letter expressly provided that the decision was based "on the very serious nature of his crime," for which Franklin was incarcerated. We find no error by the trial court.

---

[58] See *Franklin*, supra at 356 ("[T]he former district attorney for Cobb County" put the case on the dead docket.). ).

[59] See *Lee*, supra, 177 Ga. App. at 700 (1) (prosecutor who initially decided not to prosecute case, later decided to prosecute case after finding out from a police officer that defendant had filed a civil lawsuit against same officer; still, based on the evidence and pre-trial nature of the proceeding, there was no presumption that the prosecution of defendant was undertaken for a retaliatory purpose).

19

5. Franklin contends that the trial court erred by denying his motion to dismiss on the ground that the district attorney's prosecution of Franklin usurped the parole board's decision to grant him parole, in violation of the doctrine of the separation of powers. Specifically, Franklin asserts that, in violation of the separation of powers doctrine, the district attorney, who Franklin asserts is an arm of the judicial branch of government, "usurp[ed]" a lawful decision of the parole board, which Franklin asserts is an arm of the executive branch of government: "By its own admission, the decision by the District Attorney to revive a more than 30 year old case off of a dead docket was not a coincidence, and instead was a direct reaction to the executive branch's decision to release [Franklin] on parole."

At a pretrial hearing, in arguing his motion to dismiss the indictment on the basis of the expiration of the statute of limitation, Franklin's counsel, in asserting that the prosecution had placed the case on the dead docket for an unlawful purpose, recited the prosecutor's stated purpose in 1979 of placing the case on the dead docket and then he stated: "So I think there is a separation of powers issue there. That is probably more collateral." That is the only mention of a "separation of powers" issue in this case. Counsel did not seek, and the trial court did not provide, a ruling on that basis.

20

It is well-settled that this court may not address issues on appeal which were not addressed by the trial court, because this court is a court for the correction of errors and it does not consider matters which were not raised and ruled on by the trial court. Without a ruling by the trial court on this particular issue, there is nothing for this court to review upon appeal.[60]

6. Franklin contends that the trial court erred by ruling that his due process rights had not been violated. Specifically, Franklin asserts that his due process rights have been violated "[b]ased on the totality of the circumstances" in the case, alleging for example: "lack of speedy trial, violation of statute of limitations, ineffective assistance of two different counsel, prosecutorial vindictiveness, and violation of separation of powers, taken together as a whole."

---

[60] *Mordica v. State*, _ Ga. App. _ (2) (736 SE2d 153) (2012) (punctuation and footnote omitted).

"With regard to asserted errors by the trial court, however, a cumulative error rule is not applied."[61] This court does not conduct cumulative error review regarding trial court error.[62]

7. Franklin states that he reserved the right to appeal the issue of whether he is entitled to credit for time served, which decision, he claims, he was "awaiting . . . from the Department of Corrections." Without a ruling by the trial court, there is nothing for this court to review upon appeal.[63]

*Judgment affirmed. Ellington, C. J., and Dillard, J., concur.*

---

[61] *Reese v. State*, 289 Ga. 446, 450-451 (4) (c) (711 SE2d 717) (2011) (citation and punctuation omitted).

[62] See *Rice v. State*, 292 Ga. 191, 212 (11) (733 SE2d 755) (2012); *Schofield v. Holsey*, 281 Ga. 809, 811-812 (II), n. 1 (642 SE2d 56) (2007) (holding that the combined effect of trial counsel's deficiencies should be considered in the context of an ineffective assistance claim but reasserting that the cumulative error rule does not apply to issues of trial court error); *Gilford v. State*, 295 Ga. App. 651, 654 (2) (673 SE2d 40) (2009).

[63] *Mordica*, supra.

22

**FOURTH DIVISION
SMITH, P. J.,
MIKELL and ADAMS, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**July 8, 2010**

# In the Court of Appeals of Georgia

A10A0019. FRANKLIN v. THE STATE.                 SM-001C

SMITH, Presiding Judge.

In this armed robbery and aggravated assault case, Raymond Franklin appeals

from the trial court's order denying his motion to dismiss based upon a violation of

his right to a speedy trial and the expiration of the statute of limitation. For the reasons

set forth below, we affirm.

The record in this case shows that Franklin was indicted in Cobb County

Superior Court for two counts of armed robbery and one count of aggravated assault

on January 7, 1979. Ten days later, Franklin escaped from custody during a supervised

visit to a dentist's office. He killed a person during the course of his escape before

being recaptured within 24 hours. On February 8, 1979, Franklin was separately

indicted for abduction, kidnapping, and murder. On May 11, 1979, the trial judge



granted the State's request that the armed robbery case against Franklin be placed on the dead docket because Franklin was "convicted on April 26, 1979, and sentenced to 20 years for kidnapping and a death sentence for murder." The record shows no objection by Franklin to the placement of the armed robbery case on the dead docket.

On April 29, 1984, the United States Supreme Court affirmed a decision by the Eleventh Circuit Court of Appeals setting aside Franklin's murder conviction and death sentence. See *Franklin v. Francis*, 720 F.2d 1206 (11th Cir. 1983), affirmed, *Francis v. Franklin*, 471 U. S. 307 (105 SC 1965, 85 LEd 2d 344) (1985). On October 30, 1985, Franklin was again convicted of murder and kidnapping and sentenced to life in prison. At the time of Franklin's conviction, the sentencing option of life without parole had not yet been enacted by the General Assembly. See OCGA § 17-10-16 (a) (effective May 1, 1993).

Franklin testified that he became eligible for parole in March of 2006 and was sent to a work release program in April 2006. He also testified that on October 16, 2006, he was informed that he "had made parole" and would be released the following week. On October 20, 2006, Franklin learned that his release had been cancelled based upon new information. The record includes an internal memo dated December 14,

2006, requesting that the armed robbery and aggravated assault case be placed on a January 25, 2007 trial calendar.[1]

On January 25, 2007, in a one-sentence motion, the State petitioned the Cobb County Superior Court to remove the 1979 armed robbery and aggravated assault case from the dead docket. The trial court granted this motion in a written order entered on January 25, 2007, in which it noted that Franklin appeared for this hearing, was represented by appointed counsel, and did not oppose the removal of the case from the dead docket.

In a letter to Franklin's mother dated January 31, 2007, an assistant director with the state board of pardons and parole wrote:

> As you are aware, the Board's previous decision in this case was to tentatively grant parole upon [Franklin's] successful completion of the Georgia Department of Corrections work release program.
>
> The Board has now reconsidered the case and determined that it is not in the best interest of society to release him at this time.

---

[1] We cannot determine from the record before us what entity generated this memo.

3

While the Board understands your desire to have your son released earlier, based on the very serious nature of his crime, they are not inclined to change their decision at this time.

Less than one month after Franklin's case was removed from the dead docket, Franklin hired private counsel. On March 23, 2007, within two months of the removal of this case from the dead docket, Franklin's new counsel moved to dismiss the charges based upon a violation of Franklin's right to a speedy trial and the expiration of the statute of limitation.

In August 2007 and December 2007, the trial court received testimony concerning the pending motion to dismiss and requested that the parties submit proposed orders after the hearing concluded. Franklin's counsel at the time of his 1985 murder retrial testified at the hearing on Franklin's motion to dismiss. She explained that she went back to court with Franklin the day after he was sentenced to life imprisonment "because he had not been advised of his appeal rights" at the conclusion of his trial the day before. According to counsel, the presiding judge informed Franklin about his appeal rights, and Franklin waived all of his appeal rights based upon an agreement with the State that the pending armed robbery and aggravated assault case would "be completed," meaning "dismissed." Counsel recalled that she

4

made this deal with one of the assistant district attorneys who tried the case, either Nicollette Templer or Jim Morris.

Eddie Varnadore testified that he assisted Franklin's 1985 trial counsel with Franklin's defense in the murder trial. He recalled that she told him the day after the trial that they did not have to worry about an appeal of the case, but he could not remember why. He could not remember if there was a deal with the State to dismiss other pending charges.

Franklin's 1985 trial counsel did not think the district attorney was present when the deal was made. She was "sure" a court reporter was present when Franklin waived his appeal rights, and her billing on the Franklin file included a half-hour for returning to court the day after the trial was completed. Finally, she recalled that Franklin gave a newspaper interview after the deal was completed and explained that she would never have let the press interview her client if any charges were still pending against him. She could not explain why she never followed up to ensure that the armed robbery case was removed from the dead docket and dismissed.

The former district attorney for Cobb County testified at the hearing that the armed robbery case was initially placed on the dead docket in 1979 at his direction and "customary with our practice at that time." He explained that the armed robbery

5

charges remained on the dead docket at the time of Franklin's retrial for murder in 1985 "in the event that [] those [murder] charges would fall or that ultimately the defendant may be in the position to be released." He testified that he retried the case with two assistant district attorneys, Templer and Morris, and that he "made it very clear to them" that deals with the defendant "had to be made by myself." He testified that he was not familiar with the deal testified to by Franklin's 1985 trial counsel, that he would never have agreed to it, and that he would not have authorized an assistant district attorney to agree to it. He testified that he made a deliberate decision not to remove the armed robbery case from the dead docket because of Franklin's life sentence in the murder case. He explained,

> I've never been a prosecutor that believes [i]n piling on a defendant once a defendant receives a significant sentence. There would have been no purpose. You could call it judicial economy. We, as you well know, had and still have a very active and very busy circuit.

> I saw no purpose at that time to bring other charges not related to the charges under which Mr. Franklin was presently serving a significant sentence merely to gain another conviction, unless I had to. And I told you earlier the reasons I would. And, that is, if there was an imminent possibility of this defendant being released or if the charges which he was serving time were either overturned or couldn't be tried again.

6

The judge who presided over the 1985 trial testified that he could not recall whether the defendant came back to court after receiving his life sentence or whether there was a deal for him to give up his appeal rights in the murder case in exchange for an agreement by the State to give up its right to prosecute the armed robbery case. His normal practice would have been to do it in open court with a court reporter present.

The senior court reporter for Cobb County testified that she searched and found court reporter notes indicating that Franklin's murder trial ended on October 30, 1985. She searched and could not locate any court reporter notes for the murder case dated October 31, 1985, the date the 1985 trial counsel testified the deal was struck before the presiding judge. Assistant district attorney Templer testified that she did had not have a specific recollection of the Franklin murder case, but that she would not have made any deal in a case of that magnitude without the district attorney's approval.

Ten months after the close of evidence, the trial judge wrote counsel and advised them that she had consulted with a disinterested expert, a law school professor, on the issue of "dead docketing a case beyond the applicable statute of limitation[] for the charged offenses." The trial judge also informed counsel that the expert had opined "that case law could support dismissing" such a case and invited the

7

parties to submit supplemental letter briefs within 30 days. In her order denying

Franklin's motion to dismiss, the trial judge acknowledged receiving letter briefs from

both the State and Franklin on this issue, but her order does not analyze the statute of

limitation issue raised by Franklin.[2]

The trial judge's order does, however, provide an in-depth analysis of the

speedy trial issue. She noted that length of the delay "clearly triggers a speedy trial

analysis using the three remaining *Barker v. Wingo* factors." With regard to the reason

for the delay, she concluded: "the State's use of the dead docket functions was

permissible and valid under Georgia law and not undertaken in bad faith in a

deliberate attempt to hamper the defense. As such, the Court determines that the extent

that the State is to blame for the delay in this case is relatively benign." Based upon

factual disputes concerning the existence of a deal between the State and the defendant

in 1985, she found that Franklin's assertion of his speedy trial rights were "a roughly

equivalent balance as between the Defendant and the State." She factored the length

of the delay into her analysis of prejudice, and concluded:

---

[2] The record before this court does not include these letter briefs and communication with the superior court clerk's office has confirmed that these letters are not part of the official record maintained by the clerk's office.

The failure by the defense to allege and prove any particularized trial prejudice which has resulted from the delay interval in this case weighs heavily against Raymond Franklin's claim that the State has violated his rights to a speedy trial, and outweighs any "presumptive prejudice" arising from the dead docket delay in this case.

After balancing the four speedy trial factors, the trial judge found no violation of Franklin's constitutional right to a speedy trial and denied Franklin's motion to dismiss.

1. Franklin asserts the trial court erred in denying his speedy trial claim. He asserts that the trial court erred by finding that the reason for the delay was benign, instead of weighing it heavily against the State. He also asserts that the trial court erred in finding that his assertion of his right to a speedy trial was an equivalent balance between the State and himself. Finally, Franklin asserts that he demonstrated prejudice because his parole was negatively impacted by the revival of this case and by his incarceration for an additional three years while waiting for a resolution of these charges.

In examining an alleged denial of the constitutional right to a speedy trial, courts must engage in a balancing test with the following factors being considered: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right to a speedy trial; and (4)

9

prejudice to the defendant. *Barker v. Wingo*, 407 U. S. 514 (92 S. Ct. 2182, 33 LE2d 101) (1972). The existence of no one factor is either necessary or sufficient to sustain a speedy trial claim, and a trial court's findings of fact and its weighing of disputed facts will be afforded deference on appeal.

(Citation and punctuation omitted.) *Christian v. State*, 281 Ga. 474, 475-476 (2) (640 SE2d 21) (2007). We examine each of these *Barker* factors in turn.

a) *Length of the delay*. We have held that a delay over five years "is so extraordinarily long as to be considered presumptively prejudicial and to require consideration of the remaining factors in the balancing test." (Citation and punctuation omitted.) Id. We therefore consider the delay in this case presumptively prejudicial.

b) *Reason for the delay*. The second factor in the *Barker* analysis asks the court to consider "both the reason for the delay and whether this is attributable to the defendant or the state." (Citation and punctuation omitted.) *Ditman v. State*, 301 Ga. App. 187, 190-191 (2) (b) (687 SE2d 155) (2009). "[T]he reason for the delay is pivotal in evaluating the strength of a constitutional speedy trial claim, as it can color the consideration of all other factors. . . . [A]s the United States Supreme Court put it, 'the flag all litigants seek to capture is the second factor, the reason for the delay.'"

(Citations, punctuation, and footnotes omitted.) *Ruffin v. State*, 284 Ga. 52, 59 (2) (b) (ii) (663 SE2d 189) (2008).

> Deliberate delay to gain an improper advantage over the accused strikes at the very heart of the speedy trial guarantee and is thus "weighted heavily against the government" in the Barker-Doggett balancing process. Delays designed to hamper a defendant's ability to mount a successful defense, to harass the defendant, or to coerce him or her into testifying against a co-defendant or otherwise turning state's evidence all fall into this category. At the opposite extreme are situations where it is the defendant who requested or otherwise engineered the delay - say, for example, by going on the lam to avoid prosecution, filing a series of frivolous pretrial motions, or securing the unavailability of a critical prosecution witness. In such cases, it will be nearly impossible for the defendant to make out a violation of the Speedy Trial Clause.

(Citations and footnotes omitted.) Id.

There are multiple reasons for the delay in this case. A portion should certainly be attributed to Franklin's decision to escape and commit additional, more serious crimes. See *Coggins v. State*, 188 Ga. App. 455, 456-457 (II) (373 SE2d 269) (1988) (reason for delay attributed to defendant who "obviously through his own actions, was incarcerated in another county"). It can also be apportioned, in part, to the State's decision to dead docket the case four months after it was indicted as a result of

11

Franklin's murder conviction and death penalty sentence. In *Hayes v. State*, 298 Ga. App. 338, 341-345 (2) (b) (680 SE2d 182) (2009), we held that a deliberate and intentional decision by the State to dead docket a case should be weighed heavily against the State, even if there was no deliberate attempt to hamper the defense.

The trial court's order does not address the reason for the delay between Franklin's filing of his motion to dismiss in March of 2007 and the court's order denying the motion almost two years later in February 2009. "[T]he Supreme Court has made it clear that in the *Barker-Doggett*, analysis, the 'government' includes all state actors, even trial and appellate court judges." (Citation, punctuation and footnote omitted.) *Ruffin*, supra, 284 Ga. at 61 (2) (b) (ii). Thus, this portion of the delay must be weighed against the State as well.

After considering all of the above, we conclude that the trial court should have weighed the reason for the delay factor against the State. *State v. Redding*, 274 Ga. 831, 832-833 (561 SE2d 79) (2002) (State's decision to dead docket case weighed against it); *Hayes*, supra, 298 Ga. App. at 345 (2) (b). The vast majority of the delay in this case resulted from the State's decision to dead docket the case and preserve its right to prosecute Franklin at a later time.

12

c) *Assertion of the right to a speedy trial.* Franklin's failure to assert his speedy trial rights during the time the case was dead docketed (May 1979 until January 2007) cannot be held against him. See *Harris v. State*, 284 Ga. 455, 456, n.9 (667 SE2d 361) (2008) (time on dead docket not counted against defendant in weighing the delay in asserting the right to a speedy trial); *Redding*, supra, 274 Ga. at 833 (failure to assert speedy trial not weighed against defendant when State represented that case would be dead docketed); *Hayes*, supra, 298 Ga. App. at 346 (2) (c) (time case dead-docketed should not be considered when determining whether defendant timely asserted right to speedy trial). He did not, however, assert his right to a speedy trial during the four-month period after he was first indicted until the charges were dead-docketed. Likewise, he did not promptly demand a speedy trial after the removal of the case from the dead docket. Finally, his escape demonstrates that he wanted to avoid a trial, instead of seeking a speedy one. This evidence weighs against Franklin.

Based on the conflicting evidence about the deal, Franklin's escape, his failure to demand a speedy trial before the dead-docketing of this case, and his failure to file promptly a demand for a speedy trial after the case was removed from the dead docket, we conclude the trial court abused its discretion by evaluating this factor "a roughly equivalent balance as between the Defendant and the State." When the period

13

of time the case was placed on the dead docket is removed from consideration, it becomes clear that Franklin's failure to demand a speedy trial for a total of period of approximately seven months does not demonstrate a demand for a speedy trial in due course. See *Jones v. State*, 284 Ga. 320, 324 (2) (667 SE2d 49) (2008) (delay of nine months between indictment and filing of motion to dismiss weighed against defendant). This factor should therefore be weighed against Franklin. *Harris*, supra, 284 Ga. at 456.

d) *Prejudice*. When evaluating the prejudice factor in the speedy trial analysis, courts should consider the "three interests which the speedy trial right is designed to protect: preventing oppressive pretrial incarceration, minimizing anxiety and concern of the defendant, and, most importantly, limiting the possibility that the defense will be impaired." (Citation omitted.) *Grizzard v. State*, 301 Ga. App. 613, 617 (1) (d) (688 SE2d 402) (2009). While there is a presumption of actual prejudice in this case based upon the extreme length of the delay, the State can overcome this presumption if it "affirmatively prove[s] that the delay left the defendant's ability to defend himself unimpaired." (Citation and punctuation omitted.) Id. at 618 (1) (d). In this case, the State points to Franklin's testimony in the motion for new trial hearing that he confessed under oath to the armed robbery and aggravated assault charges during his

14

murder trial. He also testified that he "admitted to everything from the beginning" at the time of his arrest. He acknowledged that he never planned to defend himself and that he has not lost any witnesses that would have helped him defend the case because there were no witnesses who could help him. Franklin's testimony affirmatively proves that the delay left Franklin's ability to defend himself unimpaired.

While "the possibility of harm to the accused's defense . . . is the 'most serious' of the three factors regarding prejudice to the defendant," (Citation omitted.) *Robinson v. State*, Ga. (Case No. S10A0428, decided May 3, 2010), consideration of the other two prejudice factors also demonstrates that Franklin suffered no actual prejudice. The Georgia Supreme Court has recognized a "minimal possibility of oppressive pretrial incarceration" when a defendant is incarcerated for an unrelated offense. *Williams v. State*, 279 Ga. 106, 109 (1) (d) (610 SE2d 32) (2005). And Franklin has not shown that he suffered from any anxiety and concern about the dead docketed charges. *Treadwell v. State*, 233 Ga. 468, 470 (211 SE2d 760) (1975) (finding no anxiety when defendant told by his lawyer that the charges had been dropped).

Based on the record before it, the trial court did not err by concluding that the

presumptive prejudice from the lengthy delay was outweighed by the State's proof

that Franklin suffered no actual prejudice.[3]

e) *Balancing the four factors*. As the Supreme Court explained in *Barker*,

We regard none of the four factors identified . . . as either a necessary or
sufficient condition to the finding of a deprivation of the right of speedy
trial. Rather, they are related factors and must be considered together
with such other circumstances as may be relevant. In sum, these factors
have no talismanic qualities; courts must still engage in a difficult and
sensitive balancing process.

*Barker*, supra, 407 U. S. at 533.

While two of the factors (length of the delay and reason for the delay) weigh

heavily against the State based upon the district attorney's deliberate decision to dead

docket the case indefinitely, Franklin did not assert his right to a speedy trial after the

charges were first brought and before the case was dead-docketed. Instead, he escaped

in an attempt to avoid trial altogether. With regard to prejudice, the trial court properly

concluded that Franklin has suffered no actual and particularized prejudice. We cannot

---

[3] We find no merit in Franklin's contention that possible impairment of his
parole prospects for an unrelated crime should be considered when evaluating whether
the delay in this case impaired his defense, caused oppressive pretrial detention, or
caused anxiety and concern about the *pending* charges against him.

find that the trial court abused its discretion by denying Franklin's speedy trial claim when he escaped to avoid trial, he did not demand a speedy trial after he was captured and before the case was dead-docketed, he did not promptly demand a speedy trial after the case was removed from the dead docket, and he admitted under oath that he has no defense to the crime, that he does not have a defense and has never intended to mount a defense, and that no witnesses have been lost as a result of the delay. See *Harris*, supra, 284 Ga. at 457; *Treadwell*, supra, 233 Ga. at 470 (4); *Redd v. State*, 261 Ga. 300, 302 (404 SE2d 264) (1991); *Gray v. State*, Ga. App. (d) (iii) (Case No A09A1995, decided March 24, 2010).[4]

We recognize that this is a case with an extraordinarily long delay, but we must be mindful that "no one factor is . . . sufficient to sustain a speedy trial claim," *Christian*, supra, 281 Ga. at 475-476 (2), and that we are required to "engage in a difficult and sensitive balancing process" of all four factors. *Harris*, supra, 284 Ga. at 456. The highly unusual facts with regard to prejudice (the defendant's admissions

---

[4] The Supreme Court's recent decision in *State v. Lattimore*, Ga. (Case No. S10A0172, decided June 7, 2010), is distinguishable because in *Lattimore,* the Supreme Court did not weigh the assertion of the speedy trial right against the defendant as we have in this case. Slip. Op. at 4. And the lack of prejudice was not established with certainty because the defendant in Lattimore did not admit under oath that he never intended to mount a defense to the charges.

17

under oath about his utter lack of a defense) and the assertion of the right (the defendant's escape to avoid trial), tip the balance in this case against a finding that the defendant's right to a speedy trial was violated. To hold otherwise would elevate form over substance and give the length of the delay undue weight in the balancing test.

2. In his remaining enumeration of error, Franklin contends the trial court erred by denying his motion to dismiss the indictment based upon the statute of limitation.[5] Relying upon the following dicta in *Underhill v. State*, 129 Ga. App. 65 (198 SE2d 703) (1973), Franklin asserts that this case could not be removed from the dead docket after the expiration of the statute of limitation: "We agree with the appellant that the court's discretion may not be used in an unlawful manner, for instance, to keep an indictment hanging over the head of the defendant merely to toll the statute of limitation[]." Id. at 66 (1). The record before us, however, does not contain a ruling by the trial court on the statute of limitation issue, even though it was briefed and a subject upon which the court sought consultation with a disinterested expert. Without a ruling by the trial court, there is nothing for this court to review. *McBride v. State*, 213 Ga. App. 857, 860 (7) (446 SE2d 193) (1994). "[I]t is the duty of counsel to

---

[5] Franklin does not contend the trial court erred by failing to rule on the statute of limitation portion of his motion to dismiss.

18

obtain a ruling on his motions or objections, and the failure to do so will ordinarily, as it does in this case, result in a waiver." (Citation and punctuation omitted.) *Mayberry v. State*, 301 Ga. App. 503, 505 (1), n. 3 (687 SE2d 893) (2009).

*Judgment affirmed. Mikell and Adams, JJ., concur.*

19